RECEIVED
IN ALEXANDRIA, LA.
MAR 0 9 2010
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **WALTER G. STEELE** | CIVIL ACTION NO. 1:08-cv-01947 |
| -vs- | JUDGE DRELL |
| **POLICE DEPARTMENT OF OAKDALE, et al.** | MAGISTRATE JUDGE KIRK |

## R U L I N G

Now pending before the Court is a Motion to Dismiss (Doc. 8) under Fed. R. Civ. P. 12(b)(6) filed by the defendants. For the reasons that follow, the defendants' motion will be GRANTED. Disposition will follow by a separate judgment.

### I. Background

The plaintiff, Mr. Walter G. Steele ("Mr. Steele"), suffers from cerebral palsy, which has unfortunately caused partial paralysis of the left side of his body. In September 2003, Mr. Steele was employed by the Oakdale Police Department ("OPD"). According to Mr. Steele, the OPD was aware of his condition when he was hired. Furthermore, Mr. Steele claims that he has passed all required Civil Service tests, among them psychological and physical examinations which certify that he is capable of performing the job functions of a warden.

In October 2006, Mr. Steele was transferred to a position in which he assumed the responsibilities of a warden. However, Mr. Steele was not paid as much as the previous warden, and was initially denied a formal promotion to the position on the basis that he was unqualified. Mr. Steele was ultimately promoted to warden more

than two years later, but only after action taken by the Civil Service Board based on his complaint to them.

Moreover, Mr. Steele alleges that the Chief of the OPD, Mr. Bobby Gordon ("Chief Gordon"), has taken a number of adverse actions against him, including: (1) insisting that Mr. Steele attend a Police Officers Service Training Academy, a requirement which is not necessary to perform Mr. Steele's job functions, and which Chief Gordon has waived on behalf of other employees; (2) expressing his dissatisfaction with Mr. Steele's physical condition to other employees; (3) refusing to allow Mr. Steele to attend a "Jailers" Academy; (4) denying appropriate pay to Mr. Steele; and (5) generally, retaining OPD employees who are less qualified than Mr. Steele.

Mr. Steele filed a charge with the Equal Employment Opportunity Commission ("EEOC"), and received a right to sue letter dated September 11, 2008. (Doc. 1-1). On December 12, 2008, Mr. Steele filed a complaint in this Court under 42 U.S.C. § 1983, naming the City of Oakdale ("City"), the OPD, and Chief Gordon as defendants.[1] (Doc. 1). The complaint contains a number of legal bases for recovery, including the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution, and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq*.

On March 25, 2009, the defendants filed the instant motion to dismiss, seeking dismissal of: (1) all claims against the OPD for lack of procedural capacity to be sued,

---

[1] In the complaint, Ms. Carol Steele ("Ms. Steele") was also named as a "petitioner." (Doc. 1). However, Ms. Steele was never a named plaintiff in the lawsuit, and as such, Mr. Steele will be the only plaintiff to whom we refer for purposes of this ruling.

2

and (2) all claims under the Fourth and Sixth Amendments against all defendants, for failure to plead any facts in support of those claims. (Doc. 8). Shortly after the motion to dismiss was filed by the defendants, Mr. Steele's attorney withdrew from the case. (Doc. 16). Since that time, Mr. Steele has not retained alternate counsel, and is thus proceeding *pro se*.

The Court has afforded Mr. Steele three extensions of time to file a response to the defendants' motion to dismiss, one before Mr. Steele's attorney withdrew, and two after the withdrawal. (Docs. 14, 20, 23). In the final order granting an extension, the Court also ordered Mr. Steele to notify the Court of his new attorney's name by October 31, 2009. (Doc. 23). We were never so notified, and no opposition to the motion has been filed to this point. Thus, having allowed Mr. Steele ample time to seek legal representation, and/or to file a response, we are now prepared to rule on the merits of the motion.

II. **Law and Analysis**

    A.     **Motion to Dismiss Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss an action for "failure to state a claim upon which relief can be granted." In evaluating a Rule 12(b)(6) motion, the court must accept as true the well-pleaded facts in the plaintiff's complaint, and must construe the facts in a light most favorable to the plaintiff. Arias-Benn v. State Farm Fire & Cas. Ins. Co., 495 F.3d 228, 230 (5th Cir. 2007). However, the Court need not "'accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" Id. (quoting Plotkin v. IP Axess Inc., 407

3

F.3d 690, 696 (5th Cir. 2005)).

To survive a Rule 12(b)(6) motion, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Finally, we note that a Rule 12(b)(6) motion is a proper vehicle for seeking dismissal of claims on behalf of a defendant for lack of procedural capacity to be sued. See Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999) (granting a Rule 12(b)(6) motion in favor of employees who could not be sued in their individual capacities); Batiste v. Bonin, No. 06-1352, 2007 WL 1791219, at *1 n.1 (W.D. La. June 13, 2007) (explaining that, "[a]lthough Rule 12(b) does not specifically authorize a motion to dismiss based on a lack of capacity to be sued," granting of such a motion was appropriate); Angers ex rel. Angers v. Lafayette Consol. Gov't, No. 07-0949, 2007 WL 2908805, at *2-3 (W.D. La. Oct. 3, 2007) (dismissing a plaintiff's claims against a municipal animal shelter under Rule 12(b)(6) for lack of procedural capacity to be sued).

### B. Procedural Capacity to be Sued

The capacity of a municipal entity (such as the OPD) to sue or be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Under Louisiana law, an entity must meet the definition of a "juridical person" to have the capacity to be sued. Dejoie v. Medley, 945 So. 2d 968, 972 (La. App. 2d Cir. 2006). A "juridical person" is defined as "an entity to which the law attributes personality, such as a corporation or a partnership." La. Civ. C. art. 24.

Municipal entities are "generally treated as separate and distinct public juridical persons or corporations for certain purposes whether they are called that or not." Roberts v. Sewerage and Water Bd. of New Orleans, 634 So. 2d 341, 346 (La. 1994). However, that general rule is not without significant exceptions. As the Louisiana Supreme Court has explained, deciding whether a municipal entity may be considered a separate juridical person requires a specific analysis:

> [T]he determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.

Id. at 346-47.

In Louisiana, all municipalities, by default, are governed by the Lawrason Act "except those municipalities governed by a special legislative charter, a home rule charter or plan of government." La. R.S. § 33:321. "The City of Oakdale was chartered under the Lawrason Act, and is governed by a mayor and five aldermen." See Smith v. City of Oakdale, 353 So. 2d 455, 456 (La. App. 3d Cir. 1977). In a Lawrason Act municipality, the mayor is the chief executive officer, while the board of alderman exercises the legislative powers of the municipality. La. R.S. § 33:362(A)(1), (B). Moreover, the municipality is "vested with all powers, rights, privileges, immunities, authorities, and duties heretofore possessed in accordance with all constitutional and statutory provisions with respect thereto" and "to exercise any power and perform any function necessary, requisite, or proper for the

5

management of its affairs not denied by law." Id. § 33:361(A).

The Louisiana Third Circuit Court of Appeal addressed an issue identical to the one at bar with respect to a Lawrason Act municipality, and held that its police department was not a "juridical person" capable of being sued. Dugas v. City of Breaux Bridge Police Dep't, 757 So. 2d 741, 743-44 (La. App. 3d Cir. 2000). The court explained that, despite the police chief's "plenary power" regarding municipal law enforcement activities, the police department remained dependent upon the city "in other respects," including the appropriation of the department's budget and approval of personnel decisions. Id. at 743. Although there is no *per se* rule barring suits against police departments under the Lawrason Act or other permissible government structures, state and federal courts considering such suits consistently hold in accord with Dugas. See, e.g., LaMartina-Howell v. St. Tammany Parish Sch. Bd., No. 07-1168, 2009 WL 3837323, at *2-4 (E.D. La. Nov. 12, 2009) (holding that a police department was "not a juridical entity that may be subject to suit," and chronicling state and federal opinions reaching the same conclusion as to other police departments).[2]

In line with these precedents, the Court finds that the OPD is not an independent "juridical person" capable of being sued under Louisiana law. Therefore, the defendants' motion to dismiss will be GRANTED on this basis, and the OPD will be DISMISSED from this lawsuit.

---

[2] The defendants correctly point out that this Court previously dismissed a police department from another lawsuit involving a Lawrason Act municipality on basically identical grounds. See Doucet v. City of Bunkie, No. Civ.A. 04-1231-A, 2005 WL 2401893, at *1-2 (W.D. La. Sept. 28, 2005).

6

C.   **Fourth and Sixth Amendment Claims**

The defendants also argue that the complaint does not contain sufficient factual allegations to support a claim for relief under the Fourth or Sixth Amendments. We will briefly consider each claim in turn.

"The Fourth Amendment protects individuals 'against unreasonable searches and seizures.'" United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005) (quoting U.S. Const. amend. IV).[3] The safeguards of the Fourth Amendment are not limited to the criminal context, but apply in civil cases as well. Linbrugger v. Abercia, 363 F.3d 537, 541 (5th Cir. 2004). However, in this particular civil case, there has simply been no allegation upon which Mr. Steele could conceivably base a Fourth Amendment claim. Judging from the information presently before the Court, no searches or seizures were performed, and no warrants were executed, which involved Mr. Steele in any way. In the absence of clarification or argument to the contrary, we are constrained to consider Mr. Steele's claims based upon the bare allegations contained in his initial complaint. Those allegations fail to state a claim upon which relief could be granted under the Fourth Amendment.

Second, the complaint states that Mr. Steele's rights under the Sixth Amendment have been violated. The Sixth Amendment provides:

---

[3] The full text of the Fourth Amendment is as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

"However, the protections of the Sixth Amendment extend only to criminal proceedings." Santibanez v. Wier McMahon & Co., 105 F.3d 234, 243 (5th Cir. 1997). In any event, the complaint is silent as to how any of these rights could possibly be implicated by Mr. Steele's allegations. Once again, we can conceive of no basis for a Sixth Amendment claim in this case.

Although "a complaint 'does not need detailed factual allegations'" to withstand a Rule 12(b)(6) motion, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558 (2007)) (internal quotation marks omitted). Assuming, as we must, that all of the factual allegations in the complaint are true, we are unable to conclude that the plaintiffs have stated a right to relief under either the Fourth or the Sixth Amendments. Therefore, the defendants' motion to dismiss will likewise be GRANTED as it pertains to these arguments, and the plaintiff's claims against all remaining defendants under the Fourth and Sixth Amendments will be DISMISSED WITH PREJUDICE.

### III. Conclusion

For the foregoing reasons, the defendants' Motion to Dismiss (Doc. 8) will be GRANTED. Therefore, the OPD will be DISMISSED from this lawsuit. Moreover, the plaintiff's claims under the Fourth and Sixth Amendments against all remaining defendants will be DISMISSED WITH PREJUDICE. At this point, the plaintiff's claims under the Fourteenth Amendment, the ADA, and 42 U.S.C. §§ 1981a(a)(1), 1983, and 1988(b) remain viable and pending.

SIGNED on this _8_ day of March, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE